FILED
2002 JUN 12 AM 9:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

WAYNE O. MUSICK and
JUDY M. COLVIN as dependant
and co-administrators of the estate
of Joy Karline Musick, deceased,

    Plaintiffs,

v.                                Civil Action No. CV-01-J-1050-J

PACCAR, INC.,

    Defendant.

ENTERED
JUN 12 2002

## MEMORANDUM OPINION

Currently pending before the court are the plaintiffs' motions for summary judgment (docs. 28, 43), memoranda of law, evidentiary materials (doc. 29), and reply brief. The defendant submitted briefs in opposition thereto with supporting evidentiary materials (doc. 47). The court has reviewed the motions, the memoranda of law, and the evidentiary submissions of the parties. Upon consideration of the pleadings, briefs, evidentiary submissions, and the oral arguments of the parties held before this court in Birmingham on May 29, 2002, the court concludes that the plaintiffs' motions for summary judgment are due to be **GRANTED**.

### I. Procedural History

Plaintiffs commenced this action on April 27, 2001 by filing a complaint (doc. 1). Plaintiffs sued under Alabama law for violations of the Alabama Extended Manufacturer's



Liability Doctrine ("AEMLD"), Count I, and for negligence, Count II. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Factual Background

PACCAR, Inc. ("defendant") is a Delaware corporation with its principal place of business in the State of Washington. Answer at ¶3. Kenworth Truck Company ("Kenworth") is an unincorporated division of PACCAR, Inc. Answer at ¶3. Kenworth designs, manufactures, in part, and assembles over-the-road trucks. Answer at ¶13. Kenworth designed, manufactured, and assembled the truck at issue in this case. Answer at ¶13. Wayne O. Musick and Judy M. Colvin ("plaintiffs") are residents of the State of Florida. Complaint at ¶¶1-2.

On November 21, 1999, Thomas Bolling[1] ("Bolling") observed a truck driven by plaintiffs' decedent, Joy Karline Musick ("decedent"), on U. S. Highway 78, move "from the right lane to the left lane back to the right lane again, and immediately again it moved to the left lane and continued from the left lane into the grassy median." Bolling depo. at 30. Once onto the grassy median, decedent's truck struck a guard rail and then a bridge stanchion, where it came to a halt.[2] Bolling depo. at 30.

---

[1] Thomas Bolling is a deputy sheriff with the Shelby County Sheriff's department in Memphis, Tennessee. Bolling depo. at 9. Mr. Bolling served in the Navy for ten years, including six years as a Navy Seal. Bolling depo. at 12-14. Mr. Bolling had first aid training while in the Navy and is trained in first aid every year with the Shelby County Sheriff's department. Bolling depo. at 121. Furthermore, Bolling is trained to recognize shock in accident victims. Bolling depo. at 121-22.

[2] Bolling observed the truck moving at about the speed limit. Bolling depo. at 37.

After the truck came to a halt, Bolling pulled off Highway 78 and ran to decedent's truck. Bolling depo. at 35-36. Bolling proceeded to the driver's side of the truck where he observed "an extreme amount of diesel fuel all around the accident scene." *Id.* at 36, 39. Bolling noted that decedent was conscious and coherent. He asked her if she was okay, if she was bleeding or injured, and he made observations as to any injuries or blood on decedent's person. *Id.* at 42. Decedent responded that she was okay. *Id.* Bolling did not see any visible injuries and stated that decedent was "quite coherent and appeared to be alert. She was wearing her seat belt . . . ." *Id.* at 42-43. Decedent never appeared in pain or distress, nor did she appear to be going into shock. *Id.* at 44, 122.

Bolling attempted to open the truck door to remove decedent. Bolling depo. at 43-44. However, Bolling could not open the door and it appeared that damage to the truck pinned decedent's legs. *Id.* at 44, 46. After speaking with decedent, Bolling walked to the highway to secure a fire extinguisher and call 911. *Id.* at 48. Bolling returned to the truck and informed decedent that fire and rescue had been called and that she would be okay. *Id.* at 50. Decedent acknowledged Bolling's assurance with "[o]kay, hun." *Id.* Bolling left decedent and the truck for one or two minutes. *Id.* at 50.

As Bolling returned to the accident site, he noticed a small fire on the ground underneath the truck. Bolling depo. at 50-51. Bolling extinguished the fire and then spoke with decedent about the fire. *Id.* at 53-55. Bolling again left the accident site to check on the whereabouts of fire and rescue when he noticed a second fire burning under the truck. *Id.* at 55. Bolling returned to the truck, put out the fire, and observed "fire dripping from

underneath the vehicle, dripping downward to the ground from underneath the vehicle." *Id.* at 56. Bolling sprayed the fire extinguisher up from underneath the truck in an attempt to put out the dripping fire. *Id.*

After exhausting the fire extinguisher, Bolling spoke with decedent, told her about the second fire, and then left decedent to find another fire extinguisher. Bolling depo. at 57. By the time Bolling found a fire extinguisher, a third fire had begun under the truck. *Id.* Bolling returned to the truck an attempted to put out the fire. *Id.* This fire, however, proved too much for Bolling's fire extinguisher, and began to consume the truck. *Id.* at 58.

At the time of the third fire, Alabama State Trooper Andy Jones arrived at the scene. Bolling depo. at 58. Bolling informed Trooper Jones that the driver of the vehicle was trapped and that she was fully conscious. Bolling stated that he heard decedent scream during this period. Bolling depo. at 59, 62. Trooper Jones heard a scream as well, though he stated that the scream could have come from a bystander. Jones depo. at 38, 87. By the time fire and rescue arrived, it was too late to save decedent.

Fire and rescue extracted decedent's body from her truck and her body was brought to the coroner's office. The coroner, Randy Jackson, listed fire as the cause of death on her Certificate of Death. Pla. ex. a. The coroner did not perform an autopsy.

### III. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. Pro. 56(e)). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The non-movant must "demonstrate that there is indeed a material issue of fact


precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 106 S.Ct. at 2511. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S.Ct. at 2512.

## IV. Analysis

Plaintiffs bring suit alleging that decedent's truck was unreasonably dangerous and defective in that defendant "failed to incorporate into the design and/or manufacture of the tractor an adequate design and/or equipment which would prevent the ignition of diesel fuel or other flammables in the event of the tractor's collision with other objects."

Complaint at ¶16. Plaintiffs allege that this condition was the proximate cause of decedent's death. Complaint at ¶17. Plaintiffs have moved for summary judgment on defendant's affirmative defenses of contributory negligence, misuse of the product, and assumption of the risk. Additionally, plaintiffs have moved for summary judgment on the cause of decedent's death.

## A. Affirmative Defenses

In its answer to the complaint, defendant asserted the affirmative defenses of contributory negligence, assumption of the risk, and misuse of the product.

*1. Contributory negligence*

Plaintiffs move for summary judgment on defendant's affirmative defense of contributory negligence arguing that the truck's defect failed to prevent injuries after the accident occurred, and therefore, any negligence on the part of decedent in causing the accident is irrelevant to the AEMLD claim. Hence, plaintiffs argue, there are no genuine issues of material fact as to this defense. Pla. brief at 6. Defendant argues that it is entitled to the defense of contributory negligence given the facts of this case.

"A plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with regard to that product." *General Motors Corp. v. Saint*, 646 So.2d 564, 568 (Ala.1994). However, "a plaintiff's negligence in causing an accident is not a bar to an AEMLD action." *Saint*, 646 So.2d at 565 (citing *Dennis v. American Honda*

*Motor Co.*, 585 So.2d 1336, 1342 (Ala.1991)).³ Indeed, "[a] plaintiff's mere inadvertence or carelessness in causing an accident should not be available as an affirmative defense to an AEMLD action. To allow a plaintiff's negligence relating to accident causation to bar recovery would go against the purpose of the AEMLD, which is to protect consumers from defective products." *Dennis v. American Honda Motors Corp.*, 585 So.2d 1336, 1339 (Ala.1991).

Plaintiffs have alleged that the lack of a safety device caused the fire that claimed the life of decedent. The court finds that the negligence, if any, on the part of the decedent in causing the accident in question is irrelevant to the issue of whether the lack of a safety device made the truck unreasonably dangerous and defective. Therefore, plaintiffs' motion for summary judgment as to the defense of contributory negligence is due to be **GRANTED**.

*2. Misuse of the product*

A plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer. *Saint,* 646 So.2d at 568; Alabama Pattern Jury Instructions at 32.19.1. At oral argument and in its brief, defendant represented that the manner in which

---

³The Alabama Supreme Court in *Saint* discussed the type of situation in which a defendant would have a viable contributory negligence defense in an AEMLD case. In *Saint*, the plaintiff alleged that her seat belt failed to properly restrain her in an automobile accident that caused injuries to her person. The plaintiff's own expert testified that plaintiff allowed slack to remain in her seat belt. The defendant had warned against allowing slack to develop in the vehicle's owner's manual. The court concluded that the plaintiff failed to use reasonable care in wearing the seat belt and found the defendant was entitled to a jury charge of contributory negligence. *Saint*, 646 So.2d at 568. The court did not address any evidence of the cause of the accident, and, as noted above, stated that accident causation was not a bar to recovery. *Id.* at 565. In the case before this court, there is no evidence that decedent was contributorily negligent in the use of the non-existent safety device.

decedent operated her truck constituted a misuse of the product. However, decedent was driving on a highway, which was both intended and foreseeable to defendant. Accidents are clearly foreseeable to the defendant. The plaintiffs' motion for summary judgment on the defense of misuse of the product is due to be **GRANTED**.

*3. Assumption of the Risk*

The defense of assumption of the risk requires proof of three elements: (1) knowledge of the condition; (2) appreciation of the danger or risk posed by that condition; and (3) a voluntary, affirmative exposure to the danger or risk. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 470 (11th Cir.1993) (citing *Sprouse v. Belcher Oil Co.*, 577 So.2d 443, 444 (Ala.1991)). Assumption of the risk is a valid defense to an AEMLD claim when the party in question "fails to exercise due care by placing . . . herself into a dangerous position with appreciation of a *known* risk (emphasis in original)." *Reynolds*, 989 F.2d at 470; citing *Slade v. Montgomery*, 577 So.2d 887, 892 (Ala.1991). A general awareness of danger is not sufficient to establish that one assumed the risk of injury. *Reynolds*, 989 F.2d at 470.

Defendant argues that decedent was aware that post-accident vehicle fires happen in severe collisions. Def. brief at 10. However, even if the decedent was aware of a general danger connected with the product, this general awareness is insufficient to show decedent assumed the risk. *See Campbell v. Robert Bosch Power Tool Corp.*, 795 F.Supp. 1093, 1100 (M.D.Ala.1992). Defendant further argues that decedent knew her truck lacked an automatic battery cut-off device, and, by implication, that she assumed the risk of exposure to a post-

collision fire. Def. brief at 10. Had decedent installed this device on her truck, however, plaintiffs would now be facing the defense that decedent had improperly altered her truck.

The court concludes that there is no evidence that decedent assumed the risk of a post-collision fire and its consequences by operating the vehicle in question. Therefore, the plaintiffs' motion for summary judgment as to the affirmative defense of assumption of the risk is due to be **GRANTED**.

### B. Cause of Death

The plaintiffs have moved for summary judgment as to the cause of death of Mrs. Musick. Plaintiffs argue that the evidence points to the fire as the sole cause of decedent's death. Defendant, in opposition to this motion, has produced the affidavits of Dr. Jack Kalin and Dr. Robert Banks. Def. exs. A and B. Dr. Kalin opined that "[o]ne cannot conclude solely from a postmortem blood carboxyhemoglobin saturation of 11% that death was due to fire." Kalin aff. at ¶6. Dr. Banks, directly contradicting the eye-witness testimony of Deputy Bolling, opined that decedent died of internal injuries. Banks aff. at ¶7.

The court, having considered the motion, briefs, evidence, and oral arguments of the parties, concludes that there are no *genuine* issues of material fact as to the cause of decedent's death. There is absolutely no evidence that decedent "suffered a fatal internal injury, most likely to the liver, upon impact . . . ." Banks aff. at ¶6. The affidavit of Dr. Banks amounts to nothing more than pure speculation. The court notes that Bolling reported speaking to decedent three times after the accident, that she was alert and coherent, and that

her condition did not change (she did not become less responsive) during each time he spoke to her. Bolling depo. at 42-43, 110-11. Bolling did not observe any serious injuries and stated during his deposition that she spoke "just like I'm talking to you." *Id.* at 47, 69. As the fire consumed decedent's truck, Bolling **heard her screams**. *Id.* at 59, 62. The coroner's report lists the cause of decedent's death as fire. Pla. ex. a. There is absolutely NO proof, as opposed to speculation, that Mrs. Musick suffered a fatal injury, as proposed by defendant, and yet was "able to talk to eye witnesses before bleeding out and expiring." Banks aff. at ¶ 6. The court can only conclude that decedent died by fire.[4] As such, the plaintiffs' motion for summary judgment as to the cause of decedent's death is due to be **GRANTED**.

### V. Conclusion

The court, finding that there are no genuine issues of material fact in dispute, and that plaintiffs are entitled to summary judgment as a matter of law, **ORDERS** that the plaintiffs' motions for summary judgment are hereby **GRANTED**.

**DONE** and **ORDERED** this __11__ day of June, 2002.

*[signature]*
Inge P. Johnson
U.S. District Judge

---

[4]In keeping with Dr. Kalin's affidavit, the court does not "conclude solely from a postmortem blood carboxyhemoglobin saturation of 11% that death was due to fire." Kalin aff. at ¶6. The court reached its conclusion by examining the evidence in its entirety.